UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION

| | |
|---|---|
| TIFFANY MCGINITY,<br><br>    Plaintiff,<br><br>v.<br><br>USAA FEDERAL SAVINGS BANK,<br><br>    Defendant. | Case No.: 4:19-cv-173<br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL**<br><br>1. **TCPA, 47 U.S.C. § 227** *et seq.*<br>2. **NCDCA, N.C. Gen. Stat. § 75-52**<br>3. **Punitive Damages**<br>4. **Invasion of Privacy – Intrusion Upon Seclusion** |

**COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff Tiffany McGinity ("Plaintiff"), through her attorneys, alleges the following against USAA Federal Savings Bank, ("Defendant" or "USAA"):

**INTRODUCTION**

1. Count I of Plaintiff's Complaint is based upon the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227.

2. The TCPA is a federal statute that broadly regulates the use of automated telephone equipment.

3. Among other things, the TCPA prohibits certain unsolicited marketing calls, restricts the use of automatic dialers or prerecorded messages, and delegates rulemaking authority to the Federal Communications Commission ("FCC").

- 1 -

4. Count II of Plaintiff's Complaint is based on upon the North Carolina Debt Collection Act ("NCDCA"), N.C. Gen. Stat. § 75-52.

5. The NCDCA prohibits making repeated telephone calls with such frequency as to be unreasonable or harassing, and placing telephone calls contrary to the called party's instruction or at her place of employment.

6. Count III of Plaintiff's Complaint entitles Plaintiff to punitive damages, pursuant to N.C. Gen. Stat. § 1D-15.

7. Count IV of Plaintiff's Complaint is based upon the Invasion of Privacy – Intrusion Upon Seclusion, as derived from § 652B of the Restatement (Second) of Torts.

## JURISDICTION AND VENUE

8. Jurisdiction of the court arises under 28 U.S.C. §§ 1331, 1332, and 1367; as well as 47 U.S.C. § 227.

9. Plaintiff also brings this complaint under federal diversity jurisdiction, 28 U.S.C. §1332, as the parties are completely diverse in citizenship (Plaintiff is a citizen of North Carolina and Defendant is a citizen of Texas) and the amount in controversy exceeds $75,000.

10. Venue is proper pursuant to 28 U.S.C. § 1392(b)(2) in that a substantial part of the events or omissions giving rise to the claim occurred in this District.

11. Defendants transact business here; therefore, personal jurisdiction is established.

## PARTIES

12. Plaintiff is a natural person who resides in Raleigh, North Carolina.

13. Defendant is a corporation with its principal place of business located in San Antonio, Texas. Defendant can be served with process at 10750 McDermott Freeway, San Antonio, Texas 78288. Defendant is a "debt collector" as defined by N.C. Gen. Stat. § 75-50(3).

14. At all relevant times hereto, Defendant acted through its agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers.

## **FACTUAL ALLEGATIONS**

15. Defendant is attempting to collect an alleged debt from Plaintiff incurred for personal, family or household purposes.

16. Plaintiff recently had a stroke and heart surgery and has been struggling with financial hardship ever since.

17. In or around September of 2018, Defendant began placing calls to Plaintiff's cellular phone number ending in -3125.

18. The calls placed by Defendant mainly originated from (800) 531-0378 and (800) 531-8722.

19. Upon information and belief, the phone numbers above are owned, operated, or controlled by Defendant or its agent(s).

20. In or around September or October 2018, Plaintiff answered a call from Defendant, and heard a short pause before an agent spoke, indicating the use of an automated telephone dialing system.

21. During this conversation, Plaintiff unequivocally stated that she did not want USAA to call her anymore.

22. USAA's representative responded by telling Plaintiff that USAA would continue to call her until a payment arrangement had been made.

23. When Plaintiff responded by saying that USAA could not continue calling her, the USAA representative replied, "Oh yes we can."

24. Plaintiff's request for USAA not to call her was ignored, and Plaintiff continued to receive phone calls from Defendant on her cell phone.

25. In or around December 2018, Defendant began calling Plaintiff at her home phone number, ending in -6600, in addition to the continued calls to Plaintiff's cellular phone.

26. Defendant also called Plaintiff at her work phone number ending in -9273.

27. In or around December of 2018, Plaintiff answered a call on her cellular phone from Defendant.

28. Plaintiff heard a short pause before one of Defendant's agents began to speak, indicating the use of an automated telephone dialing system.

29. During this conversation, Plaintiff again told USAA not to call her anymore.

30. Plaintiff's second request for the calls to cease was ignored as Plaintiff continued to receive calls from Defendant to her cellular, home, and work phone numbers.

31. Between September 1, 2018 and March 1, 2019, USAA contacted Plaintiff on her cellular phone approximately **one hundred (120)** times.

32. Between December 1, 2018 and March 1, 2019, USAA contacted Plaintiff on her home phone approximately **fifty (50)** times.

33. Defendant frequently called Plaintiff multiple times in one day.

34. Because Plaintiff works from home on some days, there were several occasions where Defendant called Plaintiff while she was working.

35. Defendant also called her direct work phone number disrupting her work in Information Technology for the US Postal Service.

36. Upon information and belief, Defendant also called third parties in its attempts to collect on the alleged debt from Plaintiff.

37. Defendant's calls invaded Plaintiff's privacy because the calls were excessive and persisted even after multiple requests for them to cease.

38. Defendant's calls were done with the purpose of attempting to harass Plaintiff into making a payment.

39. Defendant's conduct was not only oppressive, wanton, malicious, and willful, but was done with the intention of causing Plaintiff such distress, so as to induce her to pay the debt.

40. Defendant would call Plaintiff multiple times in single day, and many of the phone calls occurred while Plaintiff was at work.

41. Further, the conduct was done with such frequency as to annoy, harass, oppress, and/or abuse Plaintiff.

42. Defendant's constant bombardment of calls to both Plaintiff's cell phone has caused her extreme stress, anxiety, nervousness, headaches, sleepless nights and constant

worry; Plaintiff discussed the harassment she felt from Defendant's incessant collection calls with her psychiatrist.

43. Defendant's automated debt collection calls have made Plaintiff's days unbearable because of the constant ringing of her cell phone.

44. Defendant's calls were done with a conscious disregard of Plaintiff's rights or safety.

45. As a result of Defendant's conduct, Plaintiff has sustained actual damages including but not limited to, stress, anxiety, frustration, worry, and emotional and mental pain and anguish.

## COUNT I

### (Violations of the TCPA, 47 U.S.C. § 227)

46. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

47. Defendant violated the TCPA. Defendant's violations include, but are not limited to the following:

    a. Within four years prior to the filing of this action, on multiple occasions, Defendant violated the TCPA 47 U.S.C. § 227(b)(1)(A)(iii) which states in pertinent part, "It shall be unlawful for any person within the United States . . . to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice –

to any telephone number assigned to a . . . cellular telephone service  . . . or any service for which the called party is charged for the call.

　　b. Within four years prior to the filing of this action, on multiple occasions, Defendant willfully and/or knowingly contacted Plaintiff at Plaintiff's cellular telephone using an artificial prerecorded voice or an automatic telephone dialing system and as such, Defendants knowingly and/or willfully violated the TCPA.

48. As a result of Defendant's violations of 47 U.S.C. § 227, Plaintiff is entitled to an award of five hundred dollars ($500.00) in statutory damages, for each and every violation pursuant to 47 U.S.C. § 227(b)(3)(B).

49. If the Court finds that Defendants knowingly and/or willfully violated the TCPA, Plaintiff is entitled to an award of one thousand five hundred dollars ($1,500.00), for each and every violation pursuant to 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. § 227(b)(3)(C).

## COUNT II

**(Violations of the North Carolina Debt Collection Act, N.C. Gen. Stat. § 75-52)**

50. Plaintiff incorporates herein by reference paragraphs one (1) through forty-five (45) of this Complaint as though fully set forth herein.

51. Defendant violated the NCDCA. Defendant's violations include, but are not limited to:

　　a. Within four years prior to the filing of this action, on multiple occasions, Defendant violated N.C. Gen. Stat. § 75-52(3) which states in pertinent

part that, "No debt collector shall use any conduct, the natural consequence of which is to oppress, harass, or abuse any person in connection with the attempt to collect any debt. Such unfair acts include. . . [c]ausing a telephone to ring or engaging any person in telephone conversation with such frequency as to be unreasonable or to constitute harassment to the person under the circumstances . . . ."

  b. Defendant violated § 75-52(3) by causing Plaintiff's phone to ring with such frequency as to be unreasonable, and to constitute harassment to Plaintiff.

  c. Within four years prior to the filing of this action, on multiple occasions, Defendant violated N.C. Gen. Stat. § 75-52(4) which states in pertinent part that, "No debt collector shall use any conduct, the natural consequence of which is to oppress, harass, or abuse any person in connection with the attempt to collect any debt. Such unfair acts include. . .[p]lacing telephone calls or attempting to communicate with any person, contrary to his instructions, at his place of employment . . . ."

  d. Within four years prior to the filing of this action, on multiple occasions, Defendant placed telephone calls to Plaintiff at her place of employment, contrary to Plaintiff's instructions.

52. As a result of Defendant's violations of N.C. Gen. Stat. § 75-52, Plaintiff is entitled to actual damages, and an award of not less than $500.00, but no more than $4,000 in statutory damages *per violation* pursuant to N.C. Gen. Stat. § 75-56(b).

## COUNT III

### (Punitive Damages)

53. Plaintiff incorporates herein by reference paragraphs one (1) through forty-five (45) of this Complaint as though fully set forth herein.

54. N.C. Gen. Stat. § 1D-15 allows a Plaintiff to recover punitive damages if she "proves that the defendant is liable for compensatory damages and that one of the following aggravating factors was present and was related to the injury for which compensatory damages were awarded: (1) Fraud. (2) Malice. (3) Willful or wanton conduct . . . The claimant must prove the existence of an aggravating factor by clear and convincing evidence."

55. N.C. Gen. Stat. § 1D-5(7) defines "willful or wanton conduct" as "the conscious and intentional disregard of and indifference to the rights and safety of others, which the defendant knows or should know is reasonably likely to result in injury, damage, or other harm . . . 'Willful or wanton conduct' means more than gross negligence."

56. Plaintiff is informed and believes that Defendant's conduct was wanton and willful as those terms are defined by N.C. Gen. Stat. § 1D-5.

57. Defendant was aware that Plaintiff, who had recently had heart surgery, had requested multiple times not to be called on her cell phone and that she could not make a payment. Notwithstanding, Defendant continued its bombardment of harassing phone calls to Plaintiff in violation of the TCPA and Plaintiff's privacy rights.

58. As a result of Defendant's conduct and violations, Defendant is liable to Plaintiff for punitive damages.

## COUNT IV

### (Intrusion Upon Seclusion)

59. Plaintiff incorporates herein by reference paragraphs one (1) through forty-five (45) of this Complaint as though fully set forth herein.

60. North Carolina recognizes the Restatement of the Law, Second, Torts § 652(b) which defines intrusion upon seclusion as, "One who intentionally intrudes . . . upon the solitude or seclusion of another, or his private affairs or concerns, is subject to liability to the other for invasion of privacy, if the intrusion would be highly offensive to a reasonable person." *See also Keyzer v. Amerlink, Ltd.,* 173 N.C. App. 284, 288 (2005).

61. Defendant violated Plaintiff's privacy. Defendant's violations include, but are not limited to, the following:

    a. Defendant intentionally intruded, physically or otherwise, upon Plaintiff's solitude and seclusion by engaging in harassing phone calls in an attempt to collect on an alleged debt despite numerous requests for the calls to cease.

    b. The number and frequency of the telephone calls to Plaintiff's cellular, work, and home phones by Defendant after multiple requests for the calls to cease constitute an intrusion on Plaintiff's privacy and solitude.

    c.  Defendant's conduct would be highly offensive to a reasonable person as Plaintiff received calls that often interrupted her normal daily schedule.

    d.  Defendant's acts, as described above, were done intentionally with the purpose of coercing Plaintiff to pay the alleged debt.

62. As a result of Defendant's violations of Plaintiff's privacy, Defendant is liable to Plaintiff for actual damages.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff Tiffany McGinity respectfully requests judgment be entered against Defendant, USAA Federal Savings Bank, for the following:

    A.  Declaratory judgment that Defendant violated the TCPA;

    B.  Statutory damages pursuant to 47 U.S.C. § 227(b)(3)(B), 47 U.S.C. § 227(b)(3)(C),

    C.  Statutory damages of not less than $500 nor greater than $4,000 per violation pursuant to N.C. Gen. Stat. § 75-56(b)(ii);

    D.  Actual damages pursuant to N.C. Gen. Stat. § 75-56(b)(i);

    E.  Attorney's fees upon showing that Defendant "has willfully engaged in the act or practice, and there was an unwarranted refusal by such party to fully resolve the matter" pursuant to N.C.G.S. § 75-16.1.

    F.  Punitive damages to be determined at trial, for the sake of example of punishing Defendant for their willful and/or wanton conduct, pursuant to N.C. Gen. Stat. § 1D-15;

G. Awarding Plaintiff any pre-judgment and post-judgment interest as may be allowed under the law; and

H. Any other relief that this Honorable Court deems appropriate.

Respectfully submitted this 11th day of December 2019.

RESPECTFULLY SUBMITTED,

*/s/ Dawn M. McCraw*
Dawn M. McCraw (NCB #54714)
Price Law Group, APC
8245 N. 85th Way
Scottsdale, AZ 85258
T: (818) 600-5585
F: (818) 600-5485
E: dawn@pricelawgroup.com
*Attorneys for Plaintiff*
*Tiffany McGinity*